IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

James Haselman and Dale Moon,
individually, and as representatives of a
Class of Participants and Beneficiaries
of the Schlumberger Technology
Corporation Savings and Retirement
Plan,

    Plaintiffs,

      v.

Schlumberger Technology Corporation,

    and

The Administrative Committee of the
Schlumberger Technology Corporation
Savings and Retirement Plan,

    Defendants.

Civil Action No. 4:26-cv-3121

## CLASS ACTION COMPLAINT

Plaintiffs James Haselman and Dale Moon, individually and on behalf of all other similarly situated participants in and beneficiaries of the Schlumberger Technology Corporation Savings and Retirement Plan (the "Class"), by their undersigned counsel, bring this class action complaint against the defendants listed herein:

## INTRODUCTION

1. Each year, Defendants Schlumberger Technology Corporation ("Schlumberger" or the "Company") and the Administrative Committee of the Schlumberger Technology Corporation Savings and Retirement Plan (the

1

"Committee"), as fiduciaries, must decide how to use certain assets of the Schlumberger Technology Corporation Savings and Retirement Plan (the "Plan"). These assets may be: 1) reallocated to the accounts of eligible participants, 2) used to cover participants' costs, or 3) used to cover Schlumberger's obligations. In every year since 2020, they chose to cover Schlumberger's obligations, without any regard for, or consideration of, what was in the best interest of the Plan, its participants, and their beneficiaries. These actions were unlawful.

2.　Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, the assets of a covered plan "shall be held for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan," *id*. § 1103(c)(1). Plan assets "shall never inure to the benefit of any employer." *Id*.

3.　In managing a plan and its assets, plan fiduciaries must act "solely in the interest of participants." *Id*. § 1104(a)(1). And they must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. § 1104(a)(1)(B).

4.　These fiduciary duties of loyalty and prudence govern the conduct of plan fiduciaries and impose on them "the highest duty known to the law." *Donovan v. Beirwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

5.　Further, ERISA requires plan fiduciaries to act in accordance with the plan documents. 29 U.S.C. § 1104(a)(1)(D).

6.     Defendants violated ERISA by 1) failing to act in accordance with the plan documents, 2) breaching their fiduciary duties of loyalty and prudence, and 3) allowing assets of the Plan to inure to the benefit of Defendant Schlumberger.

7.     In addition to these violations, Defendant Schlumberger also violated ERISA by failing to monitor the Committee to ensure that they were performing their delegated fiduciary obligations.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

9.     This Court has personal jurisdiction over Defendants because the Plan is administered in this District, they transact business in this District, reside in this District, and have significant contacts with this District.

10.     Venue is appropriate in this District within the meaning of 29 U.S.C. § 1132(e)(2) because some or all of the violations of ERISA described in this complaint occurred in this District and some or all of the Defendants reside and may be found in this District.

## PARTIES

11.     Plaintiff Dale Moon is a resident of El Reno, Oklahoma.

12.     Plaintiff Moon started working at Schlumberger in 2023 and is still employed by the Company.

3

13. Since 2023, Plaintiff Moon has been a participant in the Plan, as defined under 29 U.S.C. § 1002(7).

14. Plaintiff Moon's individual account has been charged with a share of the Plan's expenses, including managed account and investment management fees. These charges have reduced the monetary value of Plaintiff Moon's individual account.

15. Since 2023, Plaintiff Moon has been entitled to share in the Non-Elective Contributions for the Plan.

16. Plaintiff James Haselman is a resident of Missouri City, Texas.

17. Plaintiff Haselman started working at Schlumberger in 2012 and ended his employment with Schlumberger in 2024.

18. From 2012 to 2024, Plaintiff Haselman was a participant in the Plan, as defined under 29 U.S.C. § 1002(7).

19. Plaintiff Haselman's individual account has been charged with a share of the Plan's expenses, including investment management fees. These charges have reduced the monetary value of Plaintiff Haselman's individual account.

20. From 2012 to 2023, Plaintiff Haselman was entitled to share in the Non-Elective Contribution for the Plan.

21. The Plan is a defined contribution savings plan subject to the provisions of ERISA.

22. Defendant Schlumberger Technology Corporation is a Texas corporation with its headquarters in Houston, Texas.

23. Schlumberger, as Plan Sponsor, acted through its officers, including through the individual members of the Committee, to perform Plan-related fiduciary functions in the course and scope of their business. Schlumberger had a duty to appoint and oversee those appointees, and accordingly had a concomitant fiduciary duty to monitor, supervise, and remove those appointees under appropriate circumstances. For these reasons, Schlumberger is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

24. The Plan Administrator is the Administrative Committee. As the Plan Administrator, the Committee members are fiduciaries with day-to-day administration and operation of the Plan under 29 U.S.C. § 1002(21)(A). On information and belief, the Committee has exclusive responsibility and complete discretionary authority to control the operation, management, and administration of the Plan, with all powers necessary to properly fulfill such responsibilities. For these reasons, the Committee is a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

25. Indeed, the express duties of the Committee include: 1) "employ[ing] and compensate[ing] such accountants, attorneys and other agents and employees as the Administrative Committee may deem necessary or advisable in the proper and efficient administration of the Plan," and 2) "comput[ing] the amount and determine[ing] the manner and time of payment of all benefits according to the Plan."

**FACTUAL ALLEGATIONS**

26.    As required by 29 U.S.C. § 1102(a)(1), the Plan is maintained under a written document. The governing Plan documents during the Class Period were: (1) Schlumberger Technology Corporation Savings and Retirement Plan (as amended and Restated Effective January 1, 2016); and (2) Schlumberger Technology Corporation Savings and Retirement Plan (as amended and Restated Effective January 1, 2023).

27.    In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

28.    As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

29.    The Plan is funded by a combination of wage withholdings by Plan participants and Company contributions that are deposited into the Plan's trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

30.    The Plan provided and provides that Schlumberger will make matching contributions and non-elective contributions.

31.    Participants were and are immediately fully vested in their contributions to the Plan.

6

32.     Participants only became and become vested in Company contributions after certain prerequisites are satisfied. Generally, participants become and became vested in the Company's contributions, plus any income or losses on those balances, ratably, beginning with the completion of two years of service, and become 100% vested upon completion of six years of service.

33.     Upon their deposit into the Plan's trust fund, all participant contributions and Company contributions become assets of the Plan.

34.     When a participant has a break in service prior to the vesting of their Company contributions, the participant forfeits the balance of unvested contributions in his or her individual account and Defendants exercise discretionary authority and control over how these Plan assets (called "forfeitures") are thereafter reallocated.

35.     Each version of the Plan required and requires that Defendants decide among options for using the forfeitures in the Plan. At the direction of the Committee:

> As of the end of each Plan Year, the Trustee shall allocate the forfeitures which have become available for distribution during such Plan Year. Such forfeitures shall be allocated first to the Employer Accounts of Participants for whom a reinstatement of prior forfeitures is required pursuant to Section 5.3 hereof, in an amount determined in accordance with Section 5.3. In the event there are forfeitures remaining after the reinstatement, then such forfeitures may be used to reduce future Employer contributions to the Plan; pay Plan expenses; or will be reallocated among the Employer Accounts of Participants who are entitled to share in the Non-Elective Contribution for the Plan Year in the ratio each Participant's Admissible Compensation for such Plan Year bears to Admissible Compensation for all such Participants during the Plan Year, segregated as appropriate among the applicable Investment Funds pursuant to the provisions of Section 9.2 hereof.[1]

[1] A participant is entitled to share in the non-elective contribution for a plan year if they are employed by the Company on the last day of that year.

36. Using the forfeitures "to reduce future Employer contributions to the Plan" is always in the best interest of Schlumberger because that option allows the Company to contribute less new money to the plan.

37. If there is a risk that Schlumberger may be financially unable to satisfy its contribution obligations, this option might also be in the best interests of participants because it would provide participants with employer contributions that they might not otherwise receive.

38. For each year since 2020, Schlumberger had billions in net income and was under no risk of defaulting on its contribution obligations to the Plan.

39. Nevertheless, throughout that period, the Committee consistently acted solely on the Company's self-interests and failed to consider the interests of the Plan and its participants.

40. Absent a risk that Schlumberger would be unable to satisfy its contribution obligations, the Committee's use of the forfeitures "to reduce" employer contributions is not in the best interest of participants, as participants then either 1) pay for *all* of the Plan's expenses out of their individual accounts, or (2) receive no additional allocation of those forfeited amounts to their accounts, resulting in lower overall account balances than they otherwise would have had.

41. Conversely, absent a risk that Schlumberger would be unable to satisfy its contribution obligations, it is in the best interest of the Plan's participants for the Committee to either 1) use forfeitures to "pay Plan expenses," as this use reduces or eliminates amounts otherwise charged to participants' accounts to cover these

expenses, or 2) reallocate forfeitures to the accounts of eligible participants, as this use increases the participants' benefit. Each of these alternatives leaves participants with more assets for distribution or investment.

42. In deciding how to use the Plan's forfeited assets, the Committee is presented with a conflict of interest in its administration of the Plan.

43. Although ERISA requires fiduciaries to defray the Plan's expenses, *see* 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan allows the Committee to use the forfeited funds to pay Plan expenses, since 2020 the Committee has never used any forfeited funds for that purpose.

44. Similarly, although ERISA requires fiduciaries to act for the exclusive purpose of providing benefits to participants, *see* 29 U.S.C. § 1104(a)(1)(A)(i), and although the Plan allows the Committee to reallocate forfeitures to the accounts of eligible participants, since 2020 the Committee has never used any forfeited funds for that purpose.

45. Instead, since 2020 the Committee consistently chose to use the forfeitures for the benefit of Schlumberger by reducing its employer contributions, to the detriment of the Plan and its participants.

46. By choosing to allocate forfeitures to Schlumberger's benefit, the Committee caused participants to pay an allocation of the Plan's expenses from their individual accounts. Amounts paid by participants were as follows:

9

| Year | Amount of Expenses Paid |
|------|------------------------|
| 2020 | $4,936,745.00 |
| 2021 | $4,816,882.00 |
| 2022 | $4,285,898.00 |
| 2023 | $4,608,781.00 |
| 2024 | $3,520,507.00 |
| **Total** | **$22,168,813.00**[2] |

47.    Since 2020 all participants' accounts, including Plaintiffs' accounts, have been charged with expenses, including investment-related expenses.

48.    The deduction of expenses from the participants' accounts reduced the funds available to participants for distribution and/or investment and deprived the Plan of funds that it otherwise would have earned on the amounts deducted. Therefore, the participants' account balances would have been greater had Defendants elected to use forfeitures to pay Plan expenses.

49.    Similarly, by allocating forfeitures to reduce Schlumberger's employer contributions rather than reallocating those amounts to eligible participants' accounts, the Committee deprived participants of additional contributions that otherwise would have been credited to their accounts. As a result, eligible participants' balances were lower than they would have been if the Committee had reallocated forfeitures to their accounts. This caused participants to lose the investment returns that would have accrued on those additional amounts over time, thereby further diminishing the value of their retirement savings.

---

[2] Information for 2025 is not currently available to Plaintiffs but could be obtained through discovery.

10

50.    For each year during the Class Period, Schlumberger had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan. Nevertheless, throughout that period, the Committee consistently decided to allocate forfeitures solely in the Company's self-interest and failed to consider the interests of the Plan and its participants.

51.    Rather than defray any part of the Plan's expenses charged to participants or reallocate forfeitures to eligible participants, since 2020, the Committee utilized forfeited funds to reduce the Company's contributions in the amounts that follow:

| Year | Amount Contributions Were Reduced by Forfeitures |
|---|---|
| 2020 | $6,981,705.00 |
| 2021 | $6,687,048.00 |
| 2022 | $6,660,257.00 |
| 2023 | $5,960,943.00 |
| 2024 | $5,913,049.00 |
| **Total** | **$38,405,406.00**[3] |

52.    Moreover, since 2020, the Committee failed to exercise its discretion over certain amounts of Plan forfeitures, violating the Plan's express terms. Specifically, the Plan requires that, at the direction of the Committee, "[a]s of the end of each Plan Year, the Trustee shall allocate the forfeitures which have become available for distribution during such Plan Year." And any forfeitures over which the Committee does not exercise discretion "*will* be reallocated among Employer

---

[3] Information for 2025 is not currently available to Plaintiffs but could be obtained through discovery.

Accounts of Participants who are entitled to share in the Non-Elective Contribution for the Plan Year." (emphasis added). The amounts Defendants left unallocated are as follows: [4]

| Year | Amount of Unallocated Forfeitures at Year End |
|------|-----------------------------------------------|
| 2020 | $346,455.00 |
| 2021 | $2,202,737.00 |
| 2022 | $0 |
| 2023 | $3,472,964.00 |
| 2024 | $180,248.00 |

## CLASS ACTION ALLEGATIONS

53.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

54.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of all Plan participants and beneficiaries. Plaintiffs seek to certify, and to be appointed as representative of, the following class:

> **Class**: All participants and beneficiaries of the Schlumberger Technology Corporation Savings and Retirement Plan (excluding Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning six years prior to the date of filing and running through the date of judgment ("Class Period").

---

[4] Information for 2025 is not currently available to Plaintiffs but could be obtained through discovery.

12

55.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The class contains over 39,000 members and is so large that joinder of all its members is impracticable.

56.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Numerous common questions of law and fact exist as to Plaintiffs and the other Class members because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. These common questions predominate over individualized issues. Common questions of law and fact include but are not limited to the following:

a.    Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b.    Whether Defendants failed to follow the terms of the Plan;

c.    Whether Defendants breached their fiduciary duties of prudence and loyalty to the Plan;

d.    Whether the Defendants allowed plan assets to inure to the benefit of Schlumberger;

e.    Whether Defendant Schlumberger breached its duty to monitor;

f.    What are the losses to the Plan resulting from each of the ERISA violations described in b–e; and

g.    What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

13

57. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members because (a) Plaintiffs were participants in the Plan during the Class Period, and (b) Defendants' misconduct harmed all participants in the Plan.

58. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will adequately represent the Class because they (a) were/are participants in the Plan during the Class Period, (b) have no interest that conflicts with the Class, (c) are committed to the vigorous representation of the Class, and (d) have engaged experienced and competent lawyers to represent the Class.

59. **Risk of Inconsistent/Dispositive Adjudications – Federal Rule of Civil Procedure 23(b)(1).** Certification under Federal Rule of Civil Procedure 23(b)(1) is appropriate, because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (a) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning their discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), or (b) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

60.    **Declaratory and Injunctive Relief - Federal Rule of Civil Procedure 23(b)(2)**. Certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate because, as alleged in this complaint, Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive or corresponding declaratory relief is appropriate respecting the Class as a whole.

61.    **Damages – Federal Rule of Civil Procedure 23(b)(3).** Certification under Federal Rule of Civil Procedure 23(b)(3) is appropriate because (a) as discussed above, common issues predominate individual issues, and (b) a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Specifically, the damages or other financial detriment suffered by Plaintiffs and each of the other Class Members are small compared to the burden and expense that would be required to individually litigate their claims against Defendants, rendering it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Moreover, even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

62.    Plaintiffs' attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

15

63. The claims brought by Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts, and thus internal exhaustion of these claims is not required.

## CLAIMS

### FIRST CLAIM FOR RELIEF
### Breach of ERISA Duty to Act in
### Accordance With Plan Documents
### (29 U.S.C. § 1104(a)(1)(D))

64. Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

65. Plaintiffs assert this claim on behalf of the Class.

66. Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

67. Pursuant to 29 U.S.C. § 1104(a)(1)(D), Defendants were required to discharge their duties to the Plan "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."

68. Since 2020, Defendants have repeatedly breached their duty to act in accordance with the Plan documents by failing to allocate the Plan's unallocated forfeiture funds to "the Employer Accounts of Participants who are entitled to share in the Non-Elective Contribution for the Plan Year."

69. As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's participants and their beneficiaries were deprived of allocations of forfeited funds that should have been credited to their Employer

16

Accounts in accordance with the Plan's terms. By failing to allocate these forfeitures, Defendants caused those amounts to remain unallocated rather than being distributed to participants, resulting in reduced account balances. Participants were further harmed by the loss of investment returns that would have accrued on those amounts had they been timely and properly allocated to their accounts.

70.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendants to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

71.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## SECOND CLAIM FOR RELIEF
### Breach of ERISA Duty of Loyalty
### (29 U.S.C. § 1104(a)(1)(A))

72.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

73.    Plaintiffs assert this claim on behalf of the Class.

74.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

75.    Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and

17

beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

76.    Since 2020, Defendants have repeatedly breached their duty of loyalty with respect to their control and management of the Plan's assets by invariably choosing to use the Plan's forfeited funds for the benefit of Schlumberger rather than solely in the interest of the participants and their beneficiaries.

77.    Instead of using forfeited funds in the interest of participants by reducing or eliminating the expenses charged to their individual accounts or by reallocating these funds to eligible participants, Defendants chose to use these Plan assets for the purpose of reducing Schlumberger's own contributions to the Plan, saving the Company millions of dollars each year at the Plan's and its participants' expense.

78.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries either incurred avoidable expense deductions to their individual accounts or received no additional allocation of those forfeited amounts to their accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for Schlumberger's obligated employer contributions to the Plan and the lost investment returns on those assets.

79.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the

other Defendants to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

80.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

**THIRD CLAIM FOR RELIEF**
**Breach of ERISA Duty of Prudence**
**(29 U.S.C. § 1104(a)(1)(B))**

81.     Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

82.     Plaintiffs assert this claim on behalf of the Class.

83.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

84.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

85.     Since 2020, Defendants have repeatedly breached their duty of prudence with respect to their control and management of the Plan's assets.

86.     In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this

19

decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine which use of the Plan's forfeited funds was in the best interest of the Plan's participants. Instead, without any consideration of what was in the interest of the Plan's participants and their beneficiaries, Defendants invariably chose to use the Plan's forfeited funds for the benefit of Schlumberger.

87.    A prudent fiduciary would have established a process for determining, after considering all relevant factors, which use of Plan assets better served the Plan's participants and their beneficiaries. Defendants failed to do so.

88.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries either incurred avoidable expense deductions to their individual accounts or received no additional allocation of those forfeited amounts to their accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for Schlumberger's obligated contributions to the Plan and the lost investment returns on those assets.

89.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

20

90.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

**FOURTH CLAIM FOR RELIEF**
**Breach of ERISA's Anti-Inurement Provision**
**(29 U.S.C. § 1103(c)(1))**

91.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

92.    Plaintiffs assert this claim on behalf of the Class.

93.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

94.    The Company's contributions that a participant forfeits because that participant took a break in service prior to those contributions fully vesting are assets of the Plan.

95.    Defendants caused the assets of the plan to inure to the benefit of Schlumberger in violation of 29 U.S.C. § 1103(c)(1) by deciding to use these Plan assets as a substitute for the Company's obligated contributions to the Plan for the purpose of saving the Company tens of millions of dollars in contribution expenses.

96.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries either incurred avoidable expense deductions to their individual accounts or received no additional allocation of those forfeited amounts to their accounts. These injuries caused the Plan to suffer losses in the amount of the Plan

21

assets that were substituted for the Company's obligated employer contributions to the Plan and the lost investment returns on those assets.

97. Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

98. Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## FIFTH CLAIM FOR RELIEF
### Failure to Monitor Other Fiduciaries

99. Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

100. Plaintiffs assert this claim on behalf of the Class.

101. This claim is asserted against Defendant Schlumberger only.

102. Defendant Schlumberger is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

103. Defendant Schlumberger had the authority to appoint, oversee, and remove members or individuals of the Committee responsible for deciding how to use the Plan's forfeited assets. Defendant Schlumberger knew or should have known that these fiduciaries had critical responsibilities for the Plan.

104. In light of this authority, Defendant Schlumberger had a duty to monitor the Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

105. Defendant Schlumberger breached its fiduciary monitoring standard with respect to the Committee by, among other things, (a) failing to monitor the Committee's management and use of forfeited funds in the Plan, and (b) by failing to take steps to ensure that the Committee was discharging its duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries.

106. As a direct result of Schlumberger's breach of its fiduciary duty to monitor, the Plan suffered losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court enter judgment against Defendants on all respective claims against them and request that the Court award the following relief:

A. An order certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B. A Declaration that the Defendants are Plan fiduciaries and have breached their fiduciary duties under ERISA as described in Counts One, Two, and Three;

23

C. A Declaration that the Defendants engaged in unlawful conduct as described in Count Four;

D. A Declaration that the Defendant Schlumberger breached its duty to monitor other fiduciaries as described in Count Five;

E. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of ERISA, including restoring to the Plan all losses, restoring to the Plan all profits Defendants made through use of the Plan's assets, and restoring to the Plan all profits which its participants would have made if the Defendants had fulfilled their obligations under ERISA;

F. An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(2) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

G. An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties relating to the reallocation of the Plan's forfeited assets;

H. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

24

I.  An award of pre-judgment interest;

J.  An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and

the common fund doctrine; and

K.  Such other and further relief as the Court deems equitable and just.

DATED:  April 17, 2026                    Respectfully submitted,

/s/ *Justin S. Abbarno*

Justin S. Abbarno
Texas State Bar No. 24127438
S.D. Tex. Bar No. 3838130
**DICELLO LEVITT LLP**
8160 Norton Parkway
Mentor, Ohio  44060
Tel.:   (440) 953-8888
Fax:   (440) 953-9138
jabbarno@dicellolevitt.com

Adam J. Levitt*
Daniel R. Ferri*
Elijah G. Savage*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

* Pro hac vice forthcoming

***Counsel for Plaintiffs and the Proposed Class***

25