# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| James Haselman and Dale Moon, individually, and as representatives of a Class of Participants and Beneficiaries of the Schlumberger Technology Corporation Savings and Retirement Plan, <br><br> Plaintiffs, <br><br> v. <br><br> Schlumberger Technology Corporation, <br><br> and <br><br> The Administrative Committee of the Schlumberger Technology Corporation Savings and Retirement Plan, <br><br> Defendants. | Civil Action No. 4:26-cv-3121 |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

Dated: July 2, 2026

## TABLE CONTENTS

NATURE AND STAGE OF PROCEEDING ................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 2

STATEMENT OF ISSUES AND STANDARD ........................................................ 4

SUMMARY OF ARGUMENT................................................................................... 5

ARGUMENT .............................................................................................................. 6

   I.    DEFENDANTS VIOLATED THE PLAIN LANGUAGE OF THE PLAN....................... 6

   II.   DEFENDANTS BREACHED THE DUTIES OF LOYALTY AND PRUDENCE. .......... 9

      A.  Defendants Plausibly Violated the Duty of Loyalty......................................... 9

         1.  *Plaintiffs Do Not Seek More Than They Are Entitled to Under the Law.* ............. 13

         2.  *Plaintiffs' Theory Is Entirely Consistent with Settled Law and Regulatory Guidance* ................................................................................................... 15

         3.  *Plaintiffs' Loyalty Claim Does Not Suffer from a Causation Problem.* ................. 17

      B.  Defendants Plausibly Violated the Duty of Prudence.................................... 18

   III.  DEFENDANTS PLAUSIBLY VIOLATED ERISA'S ANTI-INUREMENT PROVISION. .................................................................................................................... 21

   IV.  PLAINTIFFS PLAUSIBLY ALLEGE A FAILURE TO MONITOR CLAIM AGAINST DEFENDANT SCHLUMBERGER. ................................................................... 24

   V.  PLAINTIFFS PLAUSIBLY ALLEGE THAT SCHLUMBERGER IS LIABLE AS A CO-FIDUCIARY. ................................................................................................ 24

   VI.  PLAINTIFF HASELMAN HAS STANDING UNDER ERISA BECAUSE HE HAS A COLORABLE CLAIM TO VESTED BENEFITS........................................................ 25

CONCLUSION.......................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*,
    953 F.2d 587 (11th Cir. 1992) ........................................................................23

*Allen v. GreatBanc Tr. Co.*,
    835 F.3d 670 (7th Cir. 2016) .........................................................................20

*Anderson v. Sw. Airlines Co.*,
    2026 WL 820860 (N.D. Tex. Mar. 25, 2026) .................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................4, 17

*Becerra v. Bank of Am. Corp.*,
    2025 WL 3032922 (W.D.N.C. Aug. 12, 2025)..............................................12, 21, 22

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) .........................................................................17, 18

*Brown v. Health Care & Ret. Corp. of Am.*,
    25 F.3d 90 (2d Cir. 1994)................................................................................22

*Buescher v. N. Am. Lighting, Inc.*,
    791 F. Supp. 3d 873 (C.D. Ill. 2025) .............................................................12, 21

*Bussian v. RJR Nabisco, Inc.*,
    223 F.3d 286 (5th Cir. 2000) .........................................................10, 11, 12, 19

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...........................................................................4

*Chao v. Malkani*,
    452 F.3d 290 (4th Cir. 2006) ..........................................................................22

*del Bosque v. Coca-Cola Sw. Beverages LLC*,
    2025 WL 3171326 (N.D. Tex. Nov. 13, 2025)................................................13

*In re Cigna ERISA Litig.*,
    2026 WL 1398620 (E.D. Pa. May 19, 2026)..................................................12, 21

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) ...........................................................24

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)...................................................................................5, 8, 20

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989)...................................................................................25

*Foltz v. U.S. News & World Rep. Inc.*,
  865 F.2d 364 (D.C. Cir. 1989) ....................................................................13

*Fox v. HCA Inc.*,
  No. 3:24-cv-00178, ECF No. 87 (M.D. Tenn. Mar. 31, 2026)...........................13, 21

*Frahm v. Equitable Life Assur. Soc. of U.S.*,
  137 F.3d 955 (7th Cir. 1998) ......................................................................11

*Gardner-Keegan v. W.W. Grainger, Inc.*,
  2026 WL 194772 (N.D. Ill. Jan. 26, 2026) ...................................................13, 15, 21

*Graden v. Conexant Sys. Inc.*,
  496 F.3d 291 (3d Cir. 2007).........................................................................25

*Harris v. Amgen, Inc.*,
  573 F.3d 728 (9th Cir. 2009) .......................................................................25

*Harris v. The Epoch Grp., L.C.*,
  357 F.3d 822 (8th Cir. 2004) .......................................................................8

*Heet v. Nat'l Medical Care, Inc.*,
  819 F. Supp. 3d 63 (D. Mass. 2026) .............................................................12, 21

*Holland v. Arch Coal, Inc.*,
  947 F.3d 812 (D.C. Cir. 2020).....................................................................22

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)..................................................................................21, 23

*Hughes v. Nw. Univ.*,
  63 F.4th 615 (7th Cir. 2023) ......................................................................20, 23

*Hutchins v. HP, Inc.*,
  767 F. Supp. 3d 912 (N.D. Cal. 2025) .........................................................14, 17, 21

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*,
  892 F.3d 719 (5th Cir. 2018) ......................................................................18

*Jacob v. RTX Corp.*,
  817 F. Supp. 3d 341 (E.D. Va. 2026) ...........................................................8

*Laborers Nat. Pension Fund v. Northern Trust Quantitative Advisors, Inc.*,
    173 F.3d 313 (5th Cir. 1999) ..................................................................................14

*Leigh v. Engle*,
    727 F.2d 113 (7th Cir. 1984) ..................................................................................23

*Maez v. Mountain States Tel. & Tel., Inc.*,
    54 F.3d 1488 (10th Cir. 1995) ................................................................................23

*Mator v. Wesco Distribution, Inc.*,
    102 F.4th 172 (3d Cir. 2024) ..................................................................................20

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ..................................................................................19

*McManus v. Clorox Co.*,
    2025 WL 732087 (N.D. Cal. Mar. 3, 2025).................................................13, 15, 21

*Meinhard v. Salmon*,
    164 N.E. 545 (N.Y. 1928).......................................................................................12

*Parrott v. Int'l Bancshares Corp.*,
    167 F.4th 728 (5th Cir. 2026) ...................................................................................9

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)................................................................................................12

*Perez-Cruet v. Qualcomm Inc.*,
    2024 WL 2702207 (S.D. Cal. May 24, 2024)...............................................12, 21

*Reich v. Compton*,
    57 F.3d 270 (3d Cir. 1995)......................................................................................10

*Rodriguez v. Intuit Inc.*,
    744 F. Supp. 3d 935 (N.D. Cal. 2024)................................................12, 13, 21, 22

*Russell v. Illinois Tool Works, Inc.*,
    2026 WL 332662 (N.D. Ill. Feb. 9, 2026) .........................................12, 13, 16, 22

*Sacerdote v. New York Univ.*,
    9 F.4th 95 (2d Cir. 2021) ........................................................................................19

*Schaefer v. Arkansas Med. Soc.*,
    853 F.2d 1487 (8th Cir. 1988) ................................................................................19

*Tillery v. WakeMed Health & Hosps.*,
    819 F. Supp. 3d 442 (E.D.N.C. 2026)........................................................................8

iv

*In re: UnitedHealth ERISA 401(k) Litig.*,
    2026 WL 1786167 (D. Minn. June 22, 2026)....................................................................12, 21

*Werdehausen v. Benicorp Ins. Co.*,
    487 F.3d 660 (8th Cir. 2007) ...........................................................................................11

**Statutes**

29 U.S.C. § 1002.................................................................................................................2, 10

29 U.S.C. § 1103.............................................................................................................21, 22, 23

29 U.S.C. § 1104.......................................................................................................... *passim*

29 U.S.C. § 1105.................................................................................................................24, 25

29 U.S.C. § 1110.......................................................................................................................9

29 U.S.C. § 1132......................................................................................................................25

**Rules**

FED. R. CIV. P. 12 .......................................................................................................................4

**Other Authorities**

Department of Labor *Amicus* Brief, *Hutchins v. HP Inc.*, No. 26-286,
    2025 WL 2673895 (9th Cir. July 9, 2025)............................................................................ 17

Use of Forfeitures in Qualified Retirement Plans,
    88 Fed. Reg. 12282 (Feb. 27, 2023) .............................................................................8, 15, 16

**NATURE AND STAGE OF PROCEEDING**

Plaintiffs allege that Defendants, in acting as fiduciaries of the Schlumberger Technology Corporation Savings and Retirement Plan (the "Plan"), put Defendant Schlumberger Technology Corporation's financial interests over the interests of the Plan's participants, violating the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1193c.

Plaintiffs' claims concern the use of "forfeitures." Participants in the Plan who terminate their employment with Defendant Schlumberger Technology Corporation ("Schlumberger" or the "Company") before fully vesting in the Company's retirement contributions forfeit those unvested assets to the Plan ("forfeitures"). There is no dispute that forfeitures are Plan assets.

The terms of the Plan provide the Administrative Committee of the Schlumberger Technology Corporation Savings and Retirement Plan (the "Committee") with fiduciary discretion over how to use the Plan's forfeiture assets. The permissible options under the Plan are: 1) reducing the contributions Schlumberger must pay to the Plan, 2) paying the administrative expenses of the Plan, which are otherwise paid by the Plan's participants, or 3) reallocating these funds to the accounts of eligible participants. The first option benefits Schlumberger because it reduces its obligated Plan contributions. The second option benefits the participants by defraying their expenses. The third provides plan participants a direct monetary benefit. Since 2020, participants have forfeited over $38 million to the Plan. Defendants have exclusively used these funds to offset Schlumberger's obligated contributions rather than use them to pay Plan expenses or reallocate them to eligible participants' accounts. These decisions contravene, *inter alia*, ERISA's mandate that fiduciaries act in the "sole interest" of plan participants and for the "exclusive purpose" of providing benefits to participants and defraying their expenses. 29 U.S.C. § 1104(a).

Further, the Plan provides that any unused forfeitures at the end of each year are to be reallocated to eligible participants' accounts. Defendants failed to comply with this Plan mandate,

1

leaving residual forfeitures in the Plan at year's end, so that they may use these funds in the subsequent year to further offset Schlumberger's contribution obligations. This, too, put Schlumberger's financial interests above the interests of the Plan's participants and, moreover, it violated ERISA's requirement that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

In sum, Plaintiffs plausibly allege that Defendants, in allocating the Plan's forfeitures in Schlumberger's interest, to the detriment of the Plan's participants, violated ERISA's strict duties of loyalty and prudence, as well as ERISA's mandate that fiduciaries comply with the terms of the Plan.

This case is before the Court on Defendants' Motion to Dismiss. For the reasons set forth below, the Court should deny the Motion.

## FACTUAL BACKGROUND

The Plan[1] is a Section 401(k) defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34). ECF No. 1 ("Compl.") ¶ 28. Defendant Schlumberger sponsors the Plan "for the benefit of its eligible employees." *Id*. ¶ 23; ECF No. 17-2 ("Plan Doc.") at 1. The Administrative Committee of the Schlumberger Technology Corporation Savings and Retirement Plan serves as the Administrator of the Plan. Compl. ¶ 24; Plan Doc. at 59 (§ 8.1).

Each participant's account is funded by a combination of wage withholdings and Company matching contributions. Compl. ¶ 29; Plan Doc. (§ 3). The Plan requires the Company to make a

---

[1] Defendants filed a true and correct copy of the operative Plan Documents concurrently with their Motion to Dismiss. ECF Nos. 17-2, 17-3. Plaintiffs agree that the Court may properly consider these Plan Documents in resolving Defendants' pending motion. Consistent with Defendants' briefing, Plaintiffs cite the 2023 version of the Plan Documents (ECF No. 17-2), as there are no relevant differences between the versions.

matching contribution to each participant. Compl. ¶ 30; Plan Doc. at 10 (§ 3.3). All contributions, including matching contributions, are deposited into the Plan's trust and thereby become assets of the Plan. Compl. ¶ 33; Plan Doc. at 14 (§ 1.64). Participants are immediately vested in their wage withholdings and any income or losses thereon. Compl. ¶ 31; Plan Doc. at 33 (§ 5.1). Participants vest in the Company's matching contributions ratably and are only fully vested in these contributions upon completion of four years of service. Plan Doc. at 33 (§ 5.1). Should a participant terminate their employment with Schlumberger before fully vesting in the Company's contributions, the unvested portion is forfeited to the Plan and becomes a Plan asset. Compl. ¶ 34; Plan Doc. at 33 (§ 5.2).

> The Plan provides that:

> As of the end of each Plan Year, the Trustee shall allocate the forfeitures which have become available for distribution during such Plan Year. Such forfeitures shall be allocated first to the Employer Accounts of Participants for whom a reinstatement of prior forfeitures is required pursuant to Section 5.3 . . . . In the event there are forfeitures remaining after the reinstatement, then such forfeitures may be used to reduce future Employer contributions to the Plan; pay Plan expenses; or will be reallocated among the Employer Accounts of [eligible] Participants . . . .

Plan Doc. at 31 (§ 4.2(f)).[2] Because the Plan provides the Committee with discretionary control over these Plan assets, it is a fiduciary with respect to its decisions regarding the allocation of forfeitures. Compl. ¶¶ 24–25.

In allocating the Plan's forfeitures, Defendants have invariably put Schlumberger's financial interests above the interests of the Plan. Since 2020, they have used over $38 million in forfeitures to offset Schlumberger's matching contribution obligations without allocating a single

---

[2] Section 5.3 provides that "Any amounts forfeited from the Employer Account of a Participant who terminates his Active Service and thereafter recommences Active Service shall be reinstated to his Employer Account (as provided in Section 4.2) within a reasonable time after repayment by the Participant of the amount of his previous distribution, if any." Plan Doc. at 34 (§5.3(c)).

dollar to pay the administrative expenses of the Plan or to the accounts of eligible participants. *Id*. ¶¶ 45, 51. They did so despite there being no risk that Schlumberger would default on its contribution obligations, as it had billions in net income in each of those years. *Id*. ¶ 38. And, for each year since 2020, rather than act in accordance with the Plan's mandates that 1) forfeitures "shall" be allocated "as of the end of each Plan Year,"[3] and 2) any unallocated forfeitures "will be reallocated" to the accounts of eligible participants, Defendants simply left millions in unallocated forfeitures in the Plan—so that they can be used to further offset the Company's obligations in subsequent years. *Id*. ¶ 52.

**STATEMENT OF ISSUES AND STANDARD**

The issues before the Court are whether Plaintiffs have plausibly stated claims for: 1) breach of the duty to act in accordance with the Plan document; 2) breach of the duties of loyalty and prudence; 3) violation of ERISA's anti-inurement provision; 4) breach of the duty to monitor; and 5) co-fiduciary liability. The Court must also decide whether Plaintiff Haselman has statutory standing under ERISA.

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

---

[3] A Plan Year is a calendar year. Plan Doc. at 12 § 1.48.

4

**SUMMARY OF ARGUMENT**

Plaintiffs have plausibly stated five claims: (1) breach of the duty to act in accordance with Plan documents, (2) breach of the duty of loyalty, (3) breach of the duty of prudence, (4) violation of ERISA's anti-inurement provision, and (5) failure to monitor other fiduciaries.

*First*, Plaintiffs state a claim for breach of the duty to act in accordance with Plan documents because the Plan requires forfeitures to be allocated "[a]s of the end of each Plan Year" and requires that residual forfeitures "be reallocated" to eligible participants' accounts. Defendants failed to comply with these allocation provisions.

*Second*, Plaintiffs state a duty-of-loyalty claim because Defendants, acting as fiduciaries, chose to use Plan assets to benefit Schlumberger by reducing its contribution obligations, rather than using those assets for participant-benefiting purposes permitted by the Plan.

*Third*, Plaintiffs state a duty-of-prudence claim because Defendants' repeated selection of the employer-benefiting option, despite available participant-benefiting alternatives and Schlumberger's ability to fund its own obligations, supports a reasonable inference that Defendants failed to undertake a reasoned and impartial fiduciary process.

*Fourth*, Plaintiffs state an anti-inurement claim because Defendants used Plan assets to relieve Schlumberger of contribution obligations it otherwise would have had to satisfy with its own assets, conferring a direct financial benefit on the Company.

*Fifth*, Plaintiffs state a failure-to-monitor claim because Schlumberger had authority to appoint and remove members of the Committee, and Plaintiffs plausibly allege underlying fiduciary breaches by the Committee. Plaintiffs have likewise plausibly alleged co-fiduciary liability because Schlumberger knew of, knowingly participated in, and failed to remedy the Committee's challenged use of Plan assets.

5

*Finally*, Mr. Haselman has statutory standing because he seeks to recover benefits that allegedly should have been reflected in his account balance before he received a distribution of his account.

## ARGUMENT

### I.　DEFENDANTS VIOLATED THE PLAIN LANGUAGE OF THE PLAN.

The Plan explicitly dictates that—at the end of each Plan Year—any forfeitures not already used to offset employer contributions or pay administrative expenses will be reallocated to the accounts of eligible participants. Defendants failed to reallocate the residual forfeitures accordingly. By way of example, in 2023, the Plan ended the year with more than $3.4 million in unallocated forfeitures. Compl. ¶ 52. Rather than reallocate these funds to eligible participants in accordance with the Plan, Defendants left these funds unallocated, so that they could be used in the subsequent year to further offset the Company's contribution obligations. *Id*. Defendants argue that "nothing in the Plan requires the Committee to reallocate forfeitures in [this] way," ECF No. 17 ("Mem.") at 10, but the Plan speaks for itself.

> Section 4.2(f) of the Plan Document states in relevant part:
>
> Forfeitures: ***As of the end of each Plan Year***, the Trustee ***shall allocate*** the forfeitures which have become available for distribution during such Plan Year. Such forfeitures shall be allocated first to the Employer Accounts of Participants for whom a reinstatement of prior forfeitures is required pursuant to Section 5.3 hereof, in an amount determined in accordance with Section 5.3. In the event there are forfeitures remaining after the reinstatement, then such forfeitures may be used to reduce future Employer contributions to the Plan; pay Plan expenses; ***or will be reallocated*** among the Employer Accounts of Participants who are entitled to share in the Non-Elective Contribution for the Plan Year . . . .

Plan Doc. at 31 (§ 4.2(f)) (emphasis added).

Section 4.2(f) thus establishes both a timing requirement and a mandatory default allocation for unused forfeitures. First, the Trustee "shall allocate" forfeitures that became available during the Plan Year "[a]s of the end of each Plan Year." Second, Defendants "may" use

6

forfeitures to reduce future employer contributions or pay Plan expenses, but forfeitures not used for either of those purposes "will be reallocated" to the Employer Accounts of participants entitled to share in the Non-Elective Contribution for that Plan Year. Accordingly, the Plan requires Defendants to allocate year-end forfeitures and prohibits them from simply leaving residual forfeitures unallocated from one Plan Year to the next.

ERISA mandates that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Defendants breached this duty by failing to allocate the residual forfeitures in the manner required by Section 4.2(f). This failure deprived eligible Plan participants—including Plaintiffs—of allocations that the Plan required be credited to their accounts.

Defendants argue that "no provision of the Plan document requires reallocation of forfeitures to be completed by a set date." Mem. at 11. According to Defendants, the Plan merely requires that the Trustee "identify" the forfeitures that have become available in each Plan Year as of the end of that Plan Year. *Id*. But Section 4.2(f) says nothing about when the Trustee must "identify" forfeitures. Indeed, the Section does not once use the word "identify"; Defendants interject it into the text to suit their preferred interpretation. Instead, Section 4.2(f) addresses when the Trustee must make allocations, providing that the Trustee "shall allocate" forfeitures "[a]s of the end of each Plan Year." Defendants' interpretation replaces the Plan's actual timing requirement for allocations with a timing requirement for identification that appears nowhere in the Plan.

Defendants' assertion that "no provision in the Plan documents requires reallocation of forfeitures to be completed by a set date" is also irreconcilable with the fact that the plan provides a default allocation for residual forfeitures. As discussed, the Plan provides that forfeitures available for distribution during a Plan Year "shall" be allocated "[a]s of the end of each Plan Year"

7

and that residual forfeitures "will be reallocated" to eligible participants. If Defendants are correct that Section 4.2(f) does not set a date by which they must allocate the Plan's annual forfeitures, then there is no point at which residual forfeitures necessarily "will be reallocated." Under Defendants' interpretation, residual forfeitures could simply remain unallocated and be carried forward from year to year to further offset employer contributions in the future. The mandatory reallocation language therefore has meaning only if Section 4.2(f) requires Defendants to complete the allocation process at year-end, including reallocating any residual forfeitures to eligible participants. *Harris v. The Epoch Grp., L.C.,* 357 F.3d 822, 825 (8th Cir. 2004) ("Under federal common law [an ERISA Plan] should be interpreted as to give meaning to all of its terms— presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." (quotation marks omitted))

Because the Plan *does* mandate a date by which forfeitures are to be allocated, the authorities upon which Defendants rely are inapposite.[4] And the proposed Treasury regulation upon which Defendants rely establishes only the latest date by which forfeitures must be used for purposes of tax qualification. *See* Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12284 (Feb. 27, 2023) ("The proposed regulations would generally require that plan administrators use forfeitures *no later than* 12 months after the close of the plan year in which the forfeitures are incurred." (emphasis added)). It does not override plan documents that impose an earlier timing requirement. *Cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 424, (2014) ("[Section] 1104(a)(1)(D) *requires* fiduciaries to follow plan documents so long as they do not

---

[4] *See Jacob v. RTX Corp.*, 817 F. Supp. 3d 341, 348 (E.D. Va. 2026) (dismissing a similar claim because "there is no provision in the Plan Document that requires forfeitures be used by the end of the year"), *appeal filed*, No. 26-1127 (4th Cir.); *Tillery v. WakeMed Health & Hosps.*, 819 F. Supp. 3d 442, 455 (E.D.N.C. 2026) (dismissing a similar claim because the plaintiff "[did] not allege that defendants breached the relevant Plan terms for forfeitures.").

conflict with ERISA." (emphasis added)). Thus, even if the proposed regulation permits plan administrators to use forfeitures within twelve months after the close of the plan year in which they arise, that says nothing about whether Defendants complied with the requirements of Section 4.2(f) here.

Finally, Defendants fall back on the assertion that, because Section 8.2 of the Plan provides the Committee with "the power to . . . construe or interpret the Plan," Plan Doc. at 59 (§ 8.2), the Court should accept Defendants' interpretation "as the correct interpretation." Mem. at 12. But ERISA does not permit Defendants to insulate themselves from liability by claiming the final say over what the Plan means. As the Fifth Circuit recently explained, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 742 (5th Cir. 2026) (quoting 29 U.S.C. § 1110(a)). Defendants' reading of Section 8.2 would do exactly that: transform a general interpretive-authority clause into a license to disregard Section 4.2(f)'s mandatory command that the Trustee "shall allocate" forfeitures "[a]s of the end of each Plan Year" and that any residual forfeitures "will be reallocated" to eligible participants. Plan Doc. at 31 (§ 4.2(f)). Plaintiffs have plausibly alleged that Defendants failed to follow that command, and the Court should reject Defendants' effort to use Section 8.2 as an exculpatory shield.

## II.   DEFENDANTS BREACHED THE DUTIES OF LOYALTY AND PRUDENCE.

### A.   Defendants Plausibly Violated the Duty of Loyalty.

Each year, Defendants chose to use all the Plan's forfeiture assets to offset Schlumberger's employer contributions and used none of those assets for the Plan participant-benefiting alternatives: paying Plan expenses or reallocating forfeitures to eligible participants' accounts.

These decisions unequivocally benefited Schlumberger over the Plan and its participants, violating ERISA's duty of loyalty.

The ERISA duty of loyalty is "the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000). It requires fiduciaries to "discharge their duties with respect to a plan *solely* in the interest of participants and beneficiaries and—(A) *for the exclusive purpose* of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1) (emphasis added). "[T]rustees violate their duty of loyalty when they act in the interests of the plan sponsor rather than with an eye single to the interests of the participants and beneficiaries of the plan." *Bussian*, 223 F.3d at 296 (quoting *Reich v. Compton,* 57 F.3d 270, 291 (3d Cir. 1995)) (quotation mark omitted).

Defendants could have used forfeitures to pay participant-borne administrative expenses or reallocated those funds to eligible participants' accounts. Compl. ¶ 35. But they did not. Instead, they used forfeitures to save Schlumberger more than $38 million in matching contributions. *Id.* ¶ 51. Defendants made this decision despite there being no risk that Schlumberger, with billions in annual profit, would have otherwise been unable to satisfy its contribution commitments. *Id.* ¶ 38.

Defendants' use of forfeitures to offset Schlumberger's contributions had the effect of *reducing* Plan participants' benefits. Defined contribution plans, such as the Plan, "provide[] . . . for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). In short, a participant's "benefit" is the amount in their account at the end of the day. Here, Defendants had the discretion to use forfeitures in ways that would have preserved participants' account balances by defraying administrative expenses or increased participants' account balances by reallocating forfeitures to

10

eligible participants. They chose not to do so; instead, they acted in the interest of saving Schlumberger money on its matching contribution obligations.

Plaintiffs' loyalty claim is supported by *Bussian*, which involved the termination of a pension plan, and an ERISA fiduciary's purchase of an annuity to cover the pension obligations. 223 F.3d at 288–293. The plan funds not spent on the annuity reverted to the company. *Id.* at 289. The fiduciary purchased the cheapest, but riskiest, annuity—maximizing the reversion. *Id.* at 290–92. The risks came to fruition and the annuity temporarily collapsed. *Id.* at 292–93. Neither the decisions to terminate the plan nor the reversion of assets was, in itself, a violation of ERISA, *id.* at 295; just like, here, the use of forfeitures to offset company contributions is not a *per se* violation of ERISA's duty of loyalty. However, the fiduciary's choice of the riskiest annuity, made with an eye towards the financial benefit of the company rather than the financial interest of plan participants, was a violation of the duty of loyalty. *Id.* at 296 ("Undertaking steps to maximize the size of the reversion [to an employer] with the direct result of reducing benefits would be a violation of ERISA's commands."). So, too, here, Defendants plausibly acted with an eye towards the benefit of Schlumberger when making a decision that resulted in the reduction of participants' benefits.[5]

Defendants wrongly argue that Plaintiffs' loyalty claim would effectively create a mandate that forfeitures be used to pay plan expenses or reallocated to eligible participants in all circumstances. Mem. at 13. But Plaintiffs' loyalty claim does not preclude a plan from being *drafted* in a way that demands that all forfeitures be used to pay employer contributions. They

---

[5] *See also Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 959 (7th Cir. 1998) ("Deliberately favoring the corporate treasury when administering . . . a plan is inconsistent with [the exclusive benefit rule]."); *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660, 665 (8th Cir. 2007) ("When the benefit plan makes alternative [options] available, the benefits decision-maker must act in accordance with its duties as an ERISA fiduciary in choosing among those [alternatives].").

11

might, for example, draft a plan that mandates the use of forfeitures to offset company matching contributions. Or they might specify narrow circumstances under which forfeitures can be used to defray expenses. Plan sponsors do not need to draft a plan, as the Company did here, that gives fiduciaries sole discretion as to how to use forfeiture assets.[6]

Further, even where plans, like this Plan, provide fiduciaries with discretion over the use of forfeitures, Plaintiffs' loyalty claim does not necessarily foreclose any use of forfeitures to reduce employer contributions. There may be instances when using forfeitures to satisfy employer contributions is necessary, or even reasonably prudent, to ensure that the company had sufficient funds to make its employer contributions. Compl. ¶ 37. But there is nothing in the Complaint that suggests this is true in this case. Rather, Defendants had billions in profit every year from which to satisfy their matching contributions. *Id*. ¶ 38. Here, it is more than plausible that Defendants acted to benefit Schlumberger and did not act in the sole interests of participants and beneficiaries, when they used forfeitures to save Schlumberger money.

While district courts have split on the issue, numerous courts have recognized the plausibility of loyalty claims, like Plaintiffs', where plan fiduciaries chose to use forfeitures to offset companies' matching contributions rather than defray participant expenses.[7] The courts that

---

[6] The fact that Schlumberger could, in the future, amend the plan language so that forfeitures must be used for its own benefit does not take away from the significance of Plaintiffs' loyalty claim. Plaintiffs are entitled to demand that *fiduciaries* act in strict compliance with their duties. *Cf. Meinhard v. Salmon,* 164 N.E. 545, 546 (N.Y. 1928) ("Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.") (Cardozo, J.) (internal citation omitted); *Bussian,* 223 F.3d at 294 (relying on *Meinhard* in the ERISA context); *Pegram v. Herdrich*, 530 U.S. 211, 224–25 (2000) (same).

[7] *See In re: UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *6 (D. Minn. June 22, 2026); *Heet v. Nat'l Medical Care, Inc.*, 819 F. Supp. 3d 63, 69–72 (D. Mass. 2026); *In re Cigna ERISA Litig.*, 2026 WL 1398620, at *4–5 (E.D. Pa. May 19, 2026); *Russell v. Illinois Tool Works, Inc.*,

have dismissed similar loyalty claims relied on the same reasoning that Defendants now employ in arguing for dismissal. As discussed directly below, that reasoning is unsound and does not support the conclusion that Plaintiffs' claim is implausible.

### 1.    *Plaintiffs Do Not Seek More Than They Are Entitled to Under the Law.*

Defendants argue that ERISA does not create a duty to "maximize pecuniary benefits." Mem. at 13 (quoting *del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326, at *4 (N.D. Tex. Nov. 13, 2025)). This statement traces back to *Foltz v. U.S. News & World Rep. Inc.*, 865 F.2d 364 (D.C. Cir. 1989), where the court held that the defendant fiduciaries did not violate ERISA by failing to maximize pecuniary benefits, *when this would be inconsistent with the "explicit directives" and purposes of the plan Id*. at 367–68, 373–75 (emphasis added). This language does not support dismissal here, where it is entirely *consistent* with the directives of the Plan for Defendants to use forfeitures to pay expenses otherwise borne by the participants. *See Russell*, 2026 WL 332662, at *5 ("Even if Defendants are not required to use forfeitures for Plan expenses

---

2026 WL 332662, at *5–6 (N.D. Ill. Feb. 9, 2026); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 890–91 (C.D. Ill. 2025); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943–94 (N.D. Cal. 2024); *Perez-Cruet v. Qualcomm Inc.*, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024), *reconsideration denied*, 2024 WL 3798391 (Aug. 12, 2024); *Becerra v. Bank of Am. Corp.*, 2025 WL 3032922, at *2–3 (W.D.N.C. Aug. 12, 2025); *Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772, at *7–9 (N.D. Ill. Jan. 26, 2026); *McManus v. Clorox Co.*, 2025 WL 732087, at *2–5 (N.D. Cal. Mar. 3, 2025); *Fox v. HCA Inc.*, No. 3:24-cv-00178, ECF No. 87 (M.D. Tenn. Mar. 31, 2026).

Defendants unsuccessfully attempt to distinguish a few of these cases by arguing that the courts' rulings were limited to claims for express violations of plan documents. Mem. at 18. The courts' rulings were not so limited. *See Rodriguez*, 744 F. Supp. 3d at 943 (Plaintiffs plausibly alleged that defendants violated "ERISA's mandate to provide benefits solely in the interest of participants . . . [b]y both violating the terms of the Plan document *and their duties under the statute*.") (emphasis added); *Gardner-Keegan*, 2026 WL 194772, at *9 (upholding loyalty claim and stating "a finding that the Plan Committee's decision to allocate forfeitures to offset Grainger's employer contributions was in the best interests of [the] Plan and its participants necessarily involves a factual investigation.").

because they need not maximize benefits, the duty of loyalty does not allow them to use forfeitures for employer contributions for a reason other than benefiting Plan participants.").

Just as they are not seeking to impose a duty to maximize benefits on Defendants, Plaintiffs are also not seeking more benefits than the Plan provides. *See* Mem. at 14. Plaintiffs are not, for instance, asking Defendants to make additional contributions or to pay the Plan's expenses. Rather, Plaintiffs are seeking ERISA's protection of the benefits that they have already been provided. The retirement savings provided under the Plan are diminished by the payment of Plan expenses and increased by allocations credited to participants' accounts. The Plan expressly provided Defendants with discretion to use forfeitures in ways that would benefit participants—by paying Plan expenses or reallocating forfeitures to eligible participants' accounts. The only thing that stopped Defendants from doing so was *their decision* to use *all* forfeiture assets to benefit Schlumberger by reducing its funding obligations.

*Hutchins v. HP, Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025), on which Defendants and other district courts have relied, is distinguishable in a critical respect. In *Hutchins*, under the unique terms of the plan, the district court held that the plan's fiduciaries would "violat[e] the [p]lan terms" if they used forfeitures to pay expenses "in direct contravention" of the plan sponsor's determination as settlor that forfeitures would not be so used. *Id.* at 925. Here, Defendants do not argue that using forfeitures to pay Plan expenses would violate the Plan's terms. Indeed, the Plan plainly grants Defendants unfettered discretion in determining whether to use the Plan's forfeitures to defray expenses. Compl. ¶ 35. Unlike in *Hutchins*, Plaintiffs are not asking for anything greater than what the Plan provides. They ask only that Defendants exercise the discretion conferred by the Plan in accordance with the mandates of 29 U.S.C. § 1104(a). *See Laborers Nat. Pension Fund*

14

*v. Northern Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 322 (5th Cir. 1999) ("A fiduciary may not discharge his duties in a manner inconsistent with ERISA.").

### 2. *Plaintiffs' Theory Is Entirely Consistent with Settled Law and Regulatory Guidance*

The Congressional and Treasury Department regulations cited by Defendants[8] do not address the exercise of fiduciary duties under a plan, but instead address *permissible plan language* regarding the use of forfeitures. In doing so, they explicitly recognize that it is permissible to use forfeiture funds to defray administrative expenses or increase participants' benefits in the context of defined contribution plans, like the Plan at issue in this case. For example, the proposed Treasury Regulation (the "Proposed Regulation") provides:

> In the case of a trust forming a part of a qualified defined contribution plan (as described in section 414(i)) that provides for forfeitures, *the plan must provide* that:
>
> > (1) Forfeitures will be used for one or more of the following purposes:
> >
> > > (i) To *pay plan administrative expenses*;
> > >
> > > (ii) To reduce employer contributions under the plan; or
> > >
> > > (iii) *To increase benefits in other participants' accounts in accordance with plan terms*. . . .

Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. at 12,285 (emphasis added). Thus, they are not at odds with Plaintiffs' theory of liability. *See Gardner-Keegan*, 2026 WL 194772, at *8 (The "Treasury Department regulations . . . are not binding on this matter . . . . Nor are they incompatible with Plaintiffs' claim.").

As stated above, Plaintiffs are not alleging that it is impermissible for the Plan language to allow for forfeitures to be used to offset matching contributions. Plaintiffs are alleging, rather, that Defendants were bound to act solely in the interest of the plan participants when exercising their

---

[8] *See* Mem. at 15–17.

discretion as fiduciaries in choosing amongst the Plan's options concerning the use of forfeitures. *See McManus*, 2025 WL 732087, at *4 n.6 ("[B]ecause the Plan is set up in a way that allows a fiduciary to decide who saves money, . . . the fiduciary [must] decide in favor of those it owes duties."). Neither the Treasury Department nor Congress has remotely suggested that the fiduciary duty of loyalty should be weakened, or that an exception should be provided, when it comes to the use of forfeitures. *See Russell*, 2026 WL 332662, at *6 (The Treasury regulations are not "persuasive, however, because they are focused on forfeiture use as a permissible act. As discussed, Plaintiffs do not challenge the permissibility of using forfeitures to reduce employer contributions under different circumstances. The mere fact that Defendants *can* make these allocations under the Plan is not mutually exclusive with the allegation that they were motivated by selfish purposes that breached their duty of loyalty." (emphasis in original)).

Moreover, the Proposed Regulation provides insight that supports Plaintiffs. In articulating the reasoning behind the Proposed Regulation, which would clarify that forfeiture funds can be used for purposes other than reducing employer contributions, the Treasury Department explained that the "use of forfeitures in defined benefit plans has . . . changed since the issuance in 1963 of § 1.401-7 . . . due to the enactment of new minimum funding requirements applicable to defined benefit plans." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. at 12,283. In other words, the intent behind ensuring a defined benefit pension plan was structured to use forfeiture funds to reduce employer contributions was to help ensure that employers could satisfy their funding obligations with respect to defined pension plans.

The converse of this logic is that if the risk of underfunding is not present, it may be reasonable to instead use forfeiture funds to defray expenses or reallocate those funds to eligible participants. Here, as the Complaint explains, this risk was not present. Rather, "[f]or each year

16

since 2020, Schlumberger had billions in net income and was under no risk of defaulting on its contribution obligations to the Plan." Compl. ¶ 38. Defendants, in using plan assets for the benefit of Schlumberger, were not plausibly protecting the continued viability of the Plan; they were just saving Schlumberger money.

The Department of Labor's Amicus Brief in *Hutchins v. HP Inc.*, No. 26-286 (9th Cir. July 9, 2025), should also be unpersuasive. In that brief, the Department of Labor speculates, without reference to any concrete or alleged facts, that if plan fiduciaries used forfeiture funds to defray plan expenses, then plan sponsors might refuse to make their future (obligated) matching contributions, leading to a dispute that could put plan participants' timely matching contributions at risk. *See* DOL *Hutchins* Amicus Brief*, 2025 WL 2673895, at *18–20. In other words, the Department of Labor's argument in support of dismissal is based entirely on its speculation that a plan sponsor might spite the plan participants (its own employees) if its chosen fiduciaries were to use forfeiture funds to defray plan expenses. There is no reason to believe that this hypothetical possibility was a factor in the fiduciary decision making in this case, such that it renders Plaintiffs' allegations implausible. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009) ("Requiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party, and would impose the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly* explicitly reject.") (internal quotations omitted).

### 3. *Plaintiffs' Loyalty Claim Does Not Suffer from a Causation Problem.*

Defendants also argue that Plaintiffs' loyalty claim suffers from a "basic causation problem." Mem. at 17–18. This is incorrect. The causation is plainly alleged: Defendants chose not to use forfeitures to defray the participants' expenses or to reallocate forfeitures to eligible participants' accounts, *causing* participants' accounts to be charged with Plan expenses and

17

depriving eligible participants of allocations that should have increased their account balances. Defendants do not dispute that this occurred.

Defendants, however, argue that they *might have* chosen to use forfeitures to reduce matching contributions because they believed that, had they not, Schlumberger would have reduced its matching contributions. *Id.* There is nothing in the Complaint that supports the plausibility of this hypothetical defense. In fact, it is completely implausible under the facts alleged in the complaint. The argument requires the Court to accept, on the pleadings, that the only plausible reason Defendants *exclusively* used forfeitures to offset matching contributions was a fear that Schlumberger, with its billions in yearly profit, would amend the Plan to cut off these contributions (a fundamental aspect of employee compensation) for 39,000 employees if forfeitures were used for any other permissible purpose. *See* Compl. ¶¶ 38, 55. This is not plausible, and it is particularly implausible in light of the fact that Schlumberger drafted a plan that explicitly gave the fiduciaries express discretion to use forfeitures to defray administrative expenses or to reallocate these funds to eligible participants. *Id.* ¶ 35.

Plaintiffs have plausibly alleged that Defendants did not act in the sole interest of Plan participants, and they are not required to plead around all hypothetical defenses. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730–31 (5th Cir. 2018) ("'[W]e must . . . take account of [a plaintiff's] limited access to crucial information.' . . . . This is because 'if plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.'" (quoting *Braden*, 588 F.3d at 598) (bracket omitted)).

### B.      Defendants Plausibly Violated the Duty of Prudence.

ERISA fiduciaries also owe a duty of prudence that requires them to "discharge [their] duties with respect to a plan . . . with the care, skill, prudence, and diligence under the

circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). The duty of prudence asks "whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the [transaction]; acted in a manner as would others familiar with such matters; and exercised independent judgment." *Bussian*, 223 F.3d at 299. "The presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised." *Id*.

For a duty of prudence claim, "[a] plaintiff typically clears the pleading bar by alleging enough facts to *infer* that the process was flawed." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022) (ellipsis and quotation marks omitted; emphasis in original); s*ee also Sacerdote v. New York Univ.*, 9 F.4th 95, 111 (2d Cir. 2021) ("[T]he absence of a deliberative process may be enough to demonstrate imprudence."). A prudent fiduciary faced with multiple permissible uses of forfeitures—particularly where one option benefits the plan sponsor and the other available options benefit participants—must do more than choose an option authorized by the Plan; the fiduciary must evaluate which available use best serves participants and beneficiaries. *Schaefer v. Arkansas Med. Soc.*, 853 F.2d 1487, 1491 (8th Cir. 1988) ("[A] fiduciary is obligated to investigate all decisions that will affect the pension plan . . . ."). The Complaint plausibly alleges that Defendants did not do so. Defendants used more than $5 million a year in forfeitures to reduce Schlumberger's contributions to the Plan, while never reallocating forfeitures to eligible participants' accounts or using them to pay participant-borne administrative expenses, despite Schlumberger having more than sufficient cash on hand to meet its matching obligations. Compl. ¶¶ 50, 51. These allegations support a reasonable inference that Defendants failed to undertake the reasoned and impartial evaluation of available forfeiture-allocation options that ERISA requires.

19

Defendants argue that Plaintiffs' prudence claim improperly rests on a categorical rule that fiduciaries must always use forfeitures to pay administrative expenses rather than reduce employer contributions. Mem. at 19–20. According to Defendants, such a rule is incompatible with the Supreme Court's instruction that the duty of prudence is necessarily "context specific" and depends on the circumstances prevailing at the time the fiduciary acts. *Id*. (citing *Dudenhoeffer*, 573 U.S. at 425). Plaintiffs agree that the prudence inquiry is context specific, and do not contend that the use of forfeitures to offset employer contributions is invariably imprudent. Indeed, there may be circumstances in which that course is appropriate, such as when the Company otherwise might be unable to satisfy its contribution obligations. *See* Compl. ¶ 37. But *Dudenhoeffer* did not create a heightened pleading standard for prudence claims. *See Hughes v. Nw. Univ.*, 63 F.4th 615, 628 (7th Cir. 2023) (The "duty of prudence inquiry is 'context specific,' but no more."). And, in the context alleged, Defendants' repeated choice to use forfeitures to reduce Schlumberger's contribution obligations, while not even using residual forfeitures to benefit participants as the Plan required, plausibly suggests the lack of a reasoned and impartial evaluation of which available use of forfeitures best served participants. *See Mator v. Wesco Distribution, Inc.,* 102 F.4th 172, 184 (3d Cir. 2024) ("[A] plaintiff alleging an ERISA fiduciary breach need not rule out every possible lawful explanation for the conduct he challenges." (internal quotation marks omitted)).

Defendants further fault Plaintiffs for failing to plead the precise contours of Defendants' process. Mem. at 20–21. But "[a] district court errs . . . [by requiring] the plaintiff . . . to describe directly the ways in which [the defendants] breached their fiduciary duties[.] [I]t is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (cleaned up). Plaintiffs have done so. Their allegations do not rest on speculation about Defendants' internal deliberations, but on Defendants' repeated selection of the

20

employer-benefiting option, their failure to use forfeitures for available participant-benefiting alternatives, and Schlumberger's ability to satisfy its own contribution obligations. Those facts plausibly support an inference that Defendants failed to engage in a prudent fiduciary process.[9]

## III.  DEFENDANTS PLAUSIBLY VIOLATED ERISA'S ANTI-INUREMENT PROVISION.

"[T]he assets of a [ERISA] plan shall never inure to the benefit of any employer . . . ." 29 U.S.C. § 1103(c)(1). Defendants' conduct violated this rule. Defendants caused the Plan's forfeiture assets to inure to the benefit of Schlumberger by using them to reduce the Company's matching contributions, rather than using them to defray expenses of administering the plan or allocating them to the accounts of eligible participants.

Relying on *Hutchins*, Defendants argue that "[a]llegations of 'indirect' or 'incidental' benefits to an employer are insufficient to state a claim under the anti-inurement provision." Mem. at 21 (citing *Hutchins*, 737 F. Supp. 3d at 868). True enough: there is no violation of ERISA's anti-inurement provision where a plan sponsor receives *incidental* intangible benefits "from the operation of a pension plan." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 445–46 (1999) (Such incidental benefits include "attracting and retaining employees, paying deferred compensation, settling or avoiding strikes, providing increased compensation without increasing wages, increasing employee turnover, and reducing the likelihood of lawsuits."). Plaintiffs, however, do not allege an incidental benefit. Instead, they allege that Schlumberger "received a [direct] benefit

---

[9] Numerous courts considering materially similar allegations have held that plaintiffs plausibly stated claims for breach of the duty of prudence. *See, e.g.*, *UnitedHealth ERISA 401(k) Litig.*, 2026 WL 1786167, at *5; *Gardner-Keegan*, 2026 WL 194772, at *9–10; *McManus*, 2025 WL 732087, at *2–5; *Becerra*, 2025 WL 3032922, at *2–3; *Rodriguez*, 744 F. Supp. 3d at 945; *Buescher*, 791 F. Supp. 3d at 891–93; *Perez-Cruet*, 2024 WL 2702207, at *3; *Heet*, 819 F. Supp. 3d at 69–72; *Cigna ERISA Litig.*, 2026 WL 1398620, at *4–5; *Fox v. HCA Inc.*, No. 3:24-cv-00178, ECF No. 87 (M.D. Tenn. Mar. 31, 2026).

amounting to ***millions of dollars in contribution expenses*** by electing to use the plan assets as a substitute for the Company's own future contributions to the plan." *Rodriguez*, 744 F. Supp. 3d at 946 (upholding anti-inurement claim arising from alleged misuse of forfeitures) (internal quotation marks omitted). This "is equivalent to 'debt forgiveness' and is thus a '***direct and greater-than-incidental benefit***.'" *Id*. (emphasis added). Because Plaintiffs allege that Defendants acted for the purpose of providing Schlumberger with a direct financial benefit, Plaintiffs plausibly allege a violation of 29 U.S.C. § 1103(c)(1).[10]

The statute asks whether plan assets "inure to the benefit of any employer," and Plaintiffs plausibly allege that Defendants used forfeitures to relieve Schlumberger of contribution obligations it otherwise would have been required to satisfy with its own assets. The fact that forfeitures ultimately funded participant benefits does not negate the direct financial benefit Defendants conferred on Schlumberger by using Plan assets to meet the Company's contribution obligations. *See Russell*, 2026 WL 332662, at *6–7 (finding plaintiffs' anti-inurement claim plausible where they alleged that defendants used forfeitures to benefit themselves rather than Plan participants); *Becerra,* 2025 WL 3032922, at *3–4 (same).

Defendants also argue that "claims under the anti-inurement provision usually require reversion or diversion of plan assets back to the sponsor," and thus "Plaintiffs fail to state an anti-inurement claim because it is undisputed that forfeitures remain in the Plan." Mem. at 21–22. Defendants' atextual interpretation of 29 U.S.C. § 1103(c)(1) is unpersuasive. The statute is not

---

[10] *See also Holland v. Arch Coal, Inc.*, 947 F.3d 812, 820–21 (D.C. Cir. 2020) (holding that pension benefits illegally inured to the benefit of the employer where plan assets were used to forgive an employer's debts to the plan); *Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006) (The "requested [excess contribution] offset would violate ERISA's anti-inurement provision, because Plan assets would benefit" the employer.); *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994) ("[S]et off[s] [of] amounts overpaid against monies yet to be paid . . . [are] in derogation of the principle that funds of an ERISA plan must never inure to the benefit of the employer.").

limited to instances of "reversion or diversion of plan assets." Rather, it broadly prohibits plan assets from "inur[ing] to the benefit of any employer." 29 U.S.C. § 1103(c)(1). Defendants ask the Court to focus on whether there was a literal diversion of Plan assets rather than on the financial reality of the transaction—that Defendants' use of forfeitures effectively diverted the value of those assets to Schlumberger by relieving the Company of obligations it otherwise would have been required to satisfy with its own assets. The Court should reject Defendants' narrow interpretation of the statute. *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984) ("The entire statutory scheme of ERISA demonstrates Congress' overriding concern with the protection of plan beneficiaries, and we would be reluctant to construe narrowly any protective provisions of the Act.").

The authorities upon which Defendants rely do not compel a different result. In *Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587 (11th Cir. 1992), the Eleventh Circuit held only that an employer's failure to contribute *additional* assets to an underfunded plan, standing alone, does not establish an anti-inurement violation. *Id*. at 592 n.6. And both *Hughes Aircraft Co.*, and *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488 (10th Cir. 1995), held that a plan sponsor does not violate the anti-inurement provision by amending a plan to use surplus assets to fund newly created benefits. *Hughes*, 525 U.S. at 442–43; *Maez*, 54 F.3d at 1505–06. None of these cases involved allegations that a plan sponsor used existing plan assets to offset contribution obligations it otherwise would have been required to satisfy with its own assets. Here, Plaintiffs do not challenge a plan amendment or a failure to make contributions to a plan. Plaintiffs allege that Defendants affirmatively used assets already held by the Plan to reduce Schlumberger's contribution obligations, thereby conferring a direct financial benefit on the Company.

## IV.   PLAINTIFFS PLAUSIBLY ALLEGE A FAILURE TO MONITOR CLAIM AGAINST DEFENDANT SCHLUMBERGER.

"A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority or control over the management or administration of a plan and is a fiduciary to the extent that he or it exercises that power." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 552 (S.D. Tex. 2003). A failure-to-monitor claim is derivative in nature and must be premised on an underlying breach of fiduciary duty. *Anderson v. Sw. Airlines Co.*, 2026 WL 820860, at *4 (N.D. Tex. Mar. 25, 2026). Plaintiffs have adequately stated such a claim: Schlumberger had the power to appoint and remove members of the Committee, Compl. ¶ 23; *see also* Plan Doc. at 59 (§ 8.1), and, as discussed throughout, the Committee committed underlying fiduciary breaches. Accordingly, the Court should deny Defendants' Motion to Dismiss with respect to this claim.

## V.   PLAINTIFFS PLAUSIBLY ALLEGE THAT SCHLUMBERGER IS LIABLE AS A CO-FIDUCIARY.

"[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary" if he "participates knowingly in" the other fiduciary's breach or "has knowledge of a breach by such other fiduciary" and fails to make "reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(1), (3). Defendant Schlumberger and the Committee were both fiduciaries with respect to the Plan. Compl. ¶¶ 23–25; *see also* Plan Doc. at 59 (§ 8.1) (providing that the Plan is administered by the Committee and that the members of the Committee are appointed by Schlumberger's Board of Directors). Plaintiffs allege that the Committee exercised discretion over the use of forfeitures each year and exclusively used those assets to reduce Schlumberger's contribution obligations rather than to pay Plan expenses or reallocate those funds to eligible participants. Compl. ¶¶ 43–51. Schlumberger benefited directly from that decision: each dollar of forfeitures used to offset matching contributions was a dollar the

24

Company did not have to contribute from its own assets. *Id*. ¶ 36. At minimum, those allegations support a reasonable inference that Schlumberger knew of, knowingly participated in, and failed to remedy the Committee's disloyal and imprudent use of Plan assets. Plaintiffs have therefore plausibly alleged co-fiduciary liability against Schlumberger under 29 U.S.C. § 1105(a).

## VI. PLAINTIFF HASELMAN HAS STANDING UNDER ERISA BECAUSE HE HAS A COLORABLE CLAIM TO VESTED BENEFITS.

ERISA authorizes suits by plan "participants" and "beneficiaries." 29 U.S.C. § 1132(a)(2). A former employee qualifies as a "participant" if he has a "colorable claim" to vested benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). Mr. Haselman satisfies that standard. For defined contribution plans, such as the Plan, "participants" include "former employees who have received a full distribution of their account balances under the defined contribution pension plan . . . [but who seek to] recover losses occasioned by a breach of fiduciary duty that allegedly reduced the amount of their benefits." *Harris v. Amgen, Inc.*, 573 F.3d 728, 733 (9th Cir. 2009); *see also Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 297 (3d Cir. 2007) ("[I]t is not difficult to conclude that [the plaintiff] has standing as a plan participant. As an account-holder in the [] plan, he was entitled to the net value of his account as it should have been in the absence of any fiduciary mismanagement."). Plaintiffs allege that Defendants' misuse of forfeitures reduced the amount that should have been credited to Mr. Haselman's account before he received a distribution. Compl. ¶ 19. Because Mr. Haselman seeks to recover benefits that should have been reflected in his account balance before distribution, he has a colorable claim to vested benefits and remains a "participant" with standing under ERISA.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Dismiss in its entirety.

25

Dated: July 2, 2026

Respectfully,

*/s/ Daniel R. Ferri*

Daniel R. Ferri*
Attorney-in-Charge
IL Bar No. 6303286
Adam J. Levitt,
IL Bar No. 6216433
S.D. Tex Bar No. 1636116
Elijah G. Savage*
IL Bar No. 6350126
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

Justin S. Abbarno
Texas State Bar No. 24127438
S.D. Tex. Bar No. 3838130
**DICELLO LEVITT LLP**
8160 Norton Parkway
Mentor, Ohio 44060
Tel.: (440) 953-8888
Fax: (440) 953-9138
jabbarno@dicellolevitt.com

* *pro hac vice*

**Counsel for Plaintiffs and the
Proposed Class**

26

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ Daniel R. Ferri
Daniel R. Ferri

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| James Haselman and Dale Moon, individually, and as representatives of a Class of Participants and Beneficiaries of the Schlumberger Technology Corporation Savings and Retirement Plan,<br><br>Plaintiffs,<br><br>v.<br><br>Schlumberger Technology Corporation,<br><br>and<br><br>The Administrative Committee of the Schlumberger Technology Corporation Savings and Retirement Plan,<br><br>Defendants. | Civil Action No. 4:26-cv-3121 |

**ORDER DENYING DEFENDANTS SCHLUMBERGER TECHNOLOGY CORPORATION AND THE ADMINISTRATIVE COMMITTEE OF THE SCHLUMBERGER TECHNOLOGY CORPORATION SAVINGS AND RETIREMENT PLAN'S RULE 12(b)(6) MOTION TO DISMISS**

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss. Having considered the

Motion, the applicable law, the arguments of counsel, and all supporting and opposing papers, the

Court hereby DENIES the Motion

SIGNED this _____ day of _____, 2026.

_____
LEE H. ROSENTHAL
UNITED STATES DISTRICT JUDGE